## PATTERSON and Others *v.* UNDERWOOD.

STATUTE OF FRAUDS.—The following was held not to be a sufficient memo-
randum in writing to take a contract for the sale of lands out of the stat-
ute of frauds: "Received of A three hundred dollars cash, on payment on
house."

DEED.—ESCROW.—A purchased of B, by parol, a house and lot for $500, and
paid $300 of the purchase money. The legal title of the property was in
C, who, at B's request, made a deed to A, and handed it to B, to be deliv-
ered if A would release the claim he set up to a pile of manure on the lot,
which C claimed as his own; A refusing to do this, B refused to deliver
the deed, and destroyed it.

*Held*, that the deed was not delivered to B as an escrow, but only to place
him in a condition to comply with his contract with A, and having been
destroyed before A had paid the balance of the purchase money, he could
claim no title under the deed.

APPEAL from the *Orange* Circuit Court.

GREGORY, C. J.—*Underwood* filed his complaint against
*Patterson* and wife, *Stalcup* and *Bird*, for the specific per-
formance of a contract for the conveyance of real estate. It
is averred in the complaint that *Underwood* purchased of
*Patterson* and wife lots numbers 19 and 20 in the town of
*Valene, Orange* county, *Indiana*, for $504, and paid $300
thereof, and took a receipt therefor, as follows: "Received
of *L. Underwood* $300 cash, on payment on house." (Sig'd)
"*John J. Patterson. Valene, March* 29, 1866." That at the
time of the purchase, the legal title to the lots was in *Jesse
L. Bell*; that *Underwood* tendered to *Patterson* and wife the
$204, and demanded a deed; that *Bell* and wife, at the
request of *Patterson* and wife, executed and acknowledged a
deed of conveyance in fee for the lots to *Underwood*, and
handed it to *Patterson*; that some difficulty occurred
between the parties about a pile of manure on the lots, and
*Patterson* tore the deed in three pieces, and threw it on the
floor; that *Underwood* picked up the pieces and produced
the same, and made the deed a part of his complaint. That
afterwards *Patterson* and wife sold the lots to *Stalcup* and
*Bird*, who had full notice of *Underwood's* equity. *Patterson*

demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendants answered, 1. By the general denial. 2. That *Jesse L. Bell* had on the lots a pile of manure, valued at $15, piled up in a rail pen thereon, which he reserved in the sale of the lots to *Patterson* and wife, and after the alleged sale by *Patterson* and wife to *Underwood*, the latter claimed the manure by reason of his purchase of the lots, and refused to take a deed unless the manure was given up to him. That the deed mentioned in the complaint was made by *Bell* and wife, upon the express understanding and agreement between *Bell* and wife and *Patterson* and wife, that it was to be delivered to *Underwood* provided he would relinquish his claim to the manure, and not otherwise. That when so tendered to him, in accordance with said agreement, he refused to accept it unless the manure was given up to him. That *Patterson* then announced to *Underwood* that he would abandon his contract of sale of the lots to the latter, and in his presence tore up the deed and threw down the pieces, which were picked up and attached together by the plaintiff. That *Patterson* tendered back to *Underwood* the $300. *Underwood* demurred to the second paragraph of the answer. The demurrer was sustained. Trial by the court. Finding for the plaintiff. Motion for a new trial overruled, and final decree. The evidence is before us.

*Underwood* purchased the lots of *Patterson* and wife on the 29th of *March*, 1866, for $500, and paid down $300, and agreed to pay the balance within ten days. *Patterson* was in possession at the time, but *Bell* had the legal title. By the terms of the contract of sale, *Patterson* was to cause *Bell* to convey the lots to *Underwood*. *Patterson* executed and delivered to *Underwood* the receipt set forth in the complaint. At the request of *Patterson* and wife, *Bell* and wife signed and acknowledged a deed of conveyance in fee for the lots to *Underwood*, and placed the same in the hands of *Patterson* for *Underwood*. At the time of the

sale to *Underwood*, there was on the lots, in pens, a pile of manure, which *Underwood* claimed under his purchase. *Bell* claimed that he had reserved the manure in his contract with *Patterson* and wife. And before he signed and placed the deed in *Patterson's* hands, he had removed the manure; when he placed the deed in *Patterson's* possession, he told him not to deliver it to *Underwood* until the latter relinquished his claim to the manure. Before the expiration of the ten days within which *Underwood* was to pay the balance of the purchase money, *Bell*, *Patterson* and *Underwood* met. *Patterson* told *Underwood* that he had his deed, and read it to him. The latter said it was all right, and offered to pay the money, but the former told him he could not have the deed until he relinquished his claim to the manure. *Underwood* said he would settle that thereafter, and refused to relinquish his claim to the manure. Thereupon *Patterson* tore up the deed and left. *Underwood* gathered up the pieces and put them together. The next day, and within the ten days, *Underwood* offered to relinquish his claim to the manure, and take the deed on the terms offered by *Bell*; *Patterson* was willing to do this, but his wife objected. At the time *Patterson* tore up the deed, he told *Underwood* that he had some money for him. The latter replied that he owed him nothing. *Underwood* tendered the balance of the purchase money within the time agreed on, and demanded the deed, and brought the money into court.

I think the court below committed no error in overruling the demurrer to the complaint. The complaint shows a conveyance by *Bell* and wife, at the request of *Patterson* and wife, to *Underwood* for the lots, in fulfillment of a parol contract of sale. This was sufficient to take the case out of the statute of frauds.

The allegation in the complaint that the deed was executed, includes delivery, as delivery is an incident essential to the due execution of a deed. 4 Kent's Com. 454. The

averment that the deed was handed to *Patterson* does not qualify or explain the averment of execution. If both parties be present, and the usual formalities of execution take place, and the contract is, to all appearances, consummated, without any conditions or qualifications annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor. 4 Kent's Com. 455–6. But ELLIOTT and RAY, J. J., do not concur in this view of the law, and the question is not decided.

There is nothing in the second paragraph of the answer which is not embraced by the general denial. The appellants relied below on the statute of frauds. The receipt is not a sufficient memorandum in writing to take the case out of the statute. It contains no promise to convey. There was no note or memorandum, therefore, in writing, of the contract. The case turns, however, upon the question whether the deed from *Bell* to *Underwood* was delivered to *Patterson* as an *escrow?* At the time the division of this court was certified, the writer of this was of the opinion that it was so delivered; but upon mature consideration, the court is now satisfied that this position cannot be maintained. BLACKSTONE, in his commentaries, says: "A delivery may be either absolute, that is, to the party or grantee himself, or to a third person, to hold till some conditions be performed on the part of the grantee, in which last case it is not delivered as a deed, but as an *escrow*, that is, as a scrowl or writing, which is not to take effect as a deed until the conditions be performed, and then it is a deed to all intents and purposes." Vol. 2, p. 307. If this writing, in the hands of *Patterson*, was an *escrow*, then, upon the performance by *Underwood* of the condition, it must have become effective to all intents and purposes; but *Underwood* was not entitled to its possession until he paid *Patterson* the balance of the purchase money. *Bell*, then, only placed *Patterson* in a condition to comply with his contract with *Underwood*, and before such compliance *Patterson* tore up the writing, and refused to perform his contract, leaving *Underwood* to his

remedy on his parol contract, which we have seen was within the statute of frauds. The court below erred in overruling the appellants' motion for a new trial.

The judgment is reversed, with costs, and the cause remanded to said court, with directions to grant a new trial, and for further proceedings.

*L. Q. & C. A. De Bruler*, *A. M. Black* and *F. Wilson*, for appellants.

*A. J. Simpson*, for appellee.