Lindley et al. *v.* Keim et al.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, GAR-
RISON, GUMMERE, ·LIPPINCOTT, LUDLOW, MAGIE, VAN
SYCKEL, BARKALOW, BOGART, NIXON—12.

*For reversal*—None.

DANIEL LINDLEY and ALFRED ADAMS and EXECUTORS &c.
OF PATRICK O'REILLY, appellants,

*v.*

JACOB KEIM, respondent.

JACOB KEIM, appellant,

*v.*

CATHARINE C. O'REILLY, respondent.

1. Authority to sign an agreement 'for the sale of lands, binding on the
principal under the statute of frauds, may be conferred upon an agent by
parol.

. 2. Such authority may be established by proof that it was expressly con-
ferred, or by proof of circumstances from which it may be reasonably inferred.

3. A signature to such an agreement made for another, without authority,
may be by him adopted and ratified so as to be of the same force as if made
by authority antecedently given, and such ratification may be inferred from
circumstances.    But knowledge that there was such an agreement signed for
him is an essential prerequisite to proof of his ratification.

4. A real estate agent or broker in whose hands an owner places lands for
sale, or who is employed to sell lands, does not thereby acquire authority to
bind his principal by signing an agreement of sale of such lands.

5. The inference that such real estate agent or broker has been endowed by
his principal with authority to bind him in a written agreement of sale can-
not be drawn from circumstances entirely consistent with his employment as a
mere agent and broker, nor without other circumstances clearly indicating the
grant of such greater authority.

Lindley et al. *v.* Keim et al.

*Mr. David J. Pancoast* (with whom was *Mr. Cyrus G. Derr*, of the Pennsylvania bar), for the executors and devisees of Patrick O'Reilly, deceased.

*Mr. Thomas B. Harned,* for Daniel Lindley and Alfred Adams, Jr.

*Mr. Martin P. Grey* and *Mr. Samuel H. Grey*, for Jacob Keim.

The opinion of the court was delivered by

MAGIE, J.

Three appeals have been taken from the decree in this cause made by the court of chancery, upon the advice of Vice-Chancellor Pitney, whose opinion is reported in *30 Atl. Rep. 1063.*

The surviving executors and the devisees of Patrick O'Reilly, deceased, appeal from the whole decree and complain that it erroneously requires them to specifically perform certain agreements with Jacob Keim by conveying to him the lands therein mentioned, and that it erroneously vacates and sets aside certain deeds and mortgages affecting said lands.

Lindley and Adams appeal from the whole decree and complain that it erroneously vacates and sets aside said deeds.

Keim appeals from so much of the decree as affixes conditions to be performed by him upon the specific performance decreed in his favor, which he claims to be erroneous.

These appeals were argued together.

Of the two agreements, specific performance of which was decreed, the first came into existence during the lifetime of Patrick O'Reilly, who was the owner of the lands in question, and is as follows :

" $25.00.
                              "ATLANTIC CITY, N. J., March 25th, 1880.

" Received of Jacob Keim the sum of twenty-five dollars on account of the purchase-money of the lot of land fifty feet in width [here follows the description]. The purchase price is to be twenty-five hundred dollars. Deed to be made and delivered as soon as practicable, not longer from the present time than one month. Said land to be conveyed belongs to Patrick O'Reilly, for whom the undersigned is agent.

                              "J. J. GARDNER, *Agent.*"

Patrick O'Reilly died on January 16th, 1881. The second agreement came into existence thereafter, and is as follows:

"Received, Atlantic City, N. J., October 29th, 1881, of Jacob Keim, the sum of five hundred dollars, on account of the purchase-money of a certain tract of land situate in said city, as follows: Beginning at a point in the southeasterly line of Pacific avenue, at a distance of two hundred feet northeasterly from the northeasterly line of New York avenue, and extending thence (1) southeasterly on a line parallel with New York avenue, a distance of one hundred and fifty feet, thence (2) southwestwardly parallel with Pacific avenue, a distance of one hundred feet; thence (3) southwestwardly parallel with New York avenue, a distance of fifty feet; thence (4) southwestwardly parallel with Pacific avenue, a distance of fifty feet; thence (5) southwestwardly parallel with New York avenue, a distance of ———— ———— to the exterior line (now under water) established in 18— by the riparian commissioners of New Jersey; thence (6) northeastwardly along said riparian line, a distance of one hundred and fifty feet; thence (7) northwestwardly parallel with New York avenue, a distance of ———— ———— to the southeasterly line of Pacific avenue; and thence (8) southwestwardly along said last-mentioned line, a distance of fifty feet to the place of beginning. And also all the additions and accretion to said tract of land, if any, which may hereafter be made on the sea front, it being the purpose of this purchase and sale to include all the land above described, and also the right, title and interest of the grantors, and of the estate of the late Patrick O'Reilly, deceased, in and to the accretions of said land which may be made upon the sea front. The balance of the purchase-money, namely, the sum of $9,500, to be paid under tender of a good and lawful deed for said premises, free from encumbrance and opposing or contesting claims of title, with undisputed possession of the same, the grantee to have sixty days' notice of such tender.

"Including all the lands and rights of said estate between Pacific avenue and riparian line and beyond, and New York and Tennessee avenue.

"JOHN J. GARDNER, *Agent P. O'Reilly Estate.*"

Both these writings purport to be agreements for the sale of lands, and to be signed by one who professes to be an agent. They were, in fact, both signed by John J. Gardner. Keim, who seeks by his bills in this cause to enforce these agreements, must preliminarily establish, by sufficient proof, that Gardner had such authority to sign them as is required by our statute of frauds. In respect to the first agreement made in Patrick O'Reilly's lifetime, it must be made to appear that Gardner was lawfully authorized by him to sign it. In respect to the second agreement, made after Patrick O'Reilly's death, it must be made

to appear that Gardner was lawfully authorized to sign it, by those on whom the ownership of the lands had devolved or who had power to sell them.

The second agreement (it may be said in passing) includes the lands which were the subject of the first agreement. Yet it is conceded that the consideration mentioned in the second agreement was the consideration agreed to be paid for the lands included therein which were not included in the first agreement. I have searched the case in vain for a reasonable explanation of that fact. Why Keim, who held, as he claims, an agreement from Patrick O'Reilly for the sale of one tract of land for $2,500, and who had agreed with Patrick O'Reilly's representatives for the sale of adjoining lands for $10,000, should have drawn the latter agreement (for it was prepared by his agent) so as to require the conveyance of both tracts for the price of the latter, remains an unsolved mystery. Upon the evidence it is perfectly clear that Gardner, whether he was lawfully authorized to sign the second agreement or not, signed it under a mistake as to the consideration named therein. As that mistake has been admitted by Keim, the decree, in directing specific performance, has required him to pay the consideration named in both agreements, and the subject need be no further pursued. But the fact may not be without significance upon some of the questions before us.

It is suggested that, by the inclusion in the second agreement of the lands covered by the first agreement, the latter became merged in the former and ceased to have binding force. But the validity of the second agreement is contested. If it is found to be invalid, it is not perceived how a merger could occur, or why Keim might not insist upon performance of the first agreement. It is deemed better, therefore, to take up the agreements for consideration in the order of time, and first to determine whether, upon the evidence, Keim was entitled to the decree for the performance of the first agreement.

The learned vice-chancellor laid down three propositions which he applied in the trial of this cause, the correctness of which has not been, and, I think, could not be, successfully contested.

The first proposition is that authority to sign a memorandum of agreement for the sale of lands may be conferred by parol, and authority so conferred will satisfy the provisions of our statute of frauds. In some states the statute of frauds has been extended so as to require that such authority shall be exhibited by writing. *Reid St. Fr.* § *380.* But our statute has never been thus extended, and it needs no citation of authorities to show that the construction of the statute from which ours was taken, and which construction we follow, has been, however inconsistent with its general purpose, that authority to sign a memorandum of agreement for the sale of lands (which is required to be in writing) need not be conferred by writing, but may be conferred by parol. But obviously courts should require proofs of authority conferred by parol in such case to be clear and decisive, or the wholesome provisions of the statute of frauds may be thus evaded.

The second proposition was that such authority to sign an agreement for the sale of land could be established either by proof that it had been expressly conferred, or by proof of circumstances from which its grant may be reasonably inferred.

The last proposition was that a signature for another to such an agreement, if done without antecedent authority, expressly or impliedly conferred, may be ratified by the person for whom the signature was made, and that such ratification would establish authority to make it as effectually as proof that such authority had been expressly conferred.

Taking these propositions as correctly expressing the character of evidence which Keim is entitled to present in order to show Gardner's authority to sign for Patrick O'Reilly the agreement of March 25th, 1880, we have to consider whether he has, by any such evidence, established that authority. Unless he has, it was error to require the enforcement of that agreement.

It is conceded that there was no evidence adduced that Patrick O'Reilly ever conferred authority upon Gardner by express words to sign the agreement in question.

The contention is that the circumstances proved require the inference, either that such authority had been antecedently con-

ferred by O'Reilly upon Gardner, or that Gardner's act in sign-ing the agreement had been subsequently ratified by O'Reilly.

That the relation of principal and agent between O'Reilly and Gardner existed at the date of the agreement and prior thereto, is an undisputed fact in the case. The dispute is as to the extent of the agency. On one hand it is contended that Gardner was clothed with power to bind his principal to the sale and con-veyance of lands; on the other hand it is contended that he had O'Reilly's lands in his hands for sale in the capacity of a mere real estate agent or broker employed to find a purchaser for such lands.

The learned vice-chancellor, in his opinion, has reviewed at considerable length all the cases in our courts touching the power acquired by an ordinary real estate agent or broker. by his employment as such, and has summed up the results in these words : " The mere employment of an ordinary real estate broker to effect a sale of a parcel of land, even though the price and terms be prescribed, does not amount to giving present authority to such broker to conclude a binding contract for the same. Moreover, such authority is not usually to be inferred from the use by the principal and broker in that connection of the terms ' for sale ' or ' to sell ' and the like. Those words in that con-nection usually mean no more than to negotiate a sale by finding a purchaser upon satisfactory terms."

I am willing to adopt this language as expressing the estab-lished law of this state respecting the relation between a real estate owner and the ordinary real estate agent or broker and the authority acquired by the latter over his principal's lands by virtue of his employment. It follows that he who seeks to establish the authority of an agent to bind his principal to the sale and conveyance of lands by proof of circumstances from which it may be inferred that such authority was granted, will not be successful if the circumstances proved merely justify the inference that the principal had placed his lands in the hands of the agent as an ordinary real estate broker. To establish the grant of the greater authority the circumstances must show more than the grant of the restricted authority.

The proofs taken on this subject are exceedingly voluminous. The circumstances claimed to have been proved and to justify an inference that O'Reilly had conferred upon Gardner authority to sign the agreement of March 25th, 1880, are marshaled at great length in the opinion below. No single fact which could bear, or be supposed to bear, upon the question has been overlooked. No useful purpose will be served by reviewing the facts. It is sufficient to say that, in our judgment, no single fact proved is inconsistent with the authority conferred upon Gardner by O'Reilly, having been the restricted authority of the ordinary real estate agent. All the facts together do not justify the inference that O'Reilly had conferred upon Gardner either general authority to bind him to the sale and conveyance of lands or special authority to bind him to the sale and conveyance of the lands mentioned in the agreement in question.

It has not been seriously argued that there is sufficient proof of the ratification of this agreement by O'Reilly in the few months which elapsed before his death. Proof which is said to tend in that direction, fails to establish ratification for one obvious reason. It does not make it appear that O'Reilly had knowledge of the act of Gardner in signing this agreement. Knowledge of the act which has been done without authority is an essential element of the ratification of the act. If we may draw a reasonable inference that O'Reilly knew that Gardner had sold this land to Keim, and was satisfied with the sale, or that O'Reilly would have executed and delivered a deed therefor to Keim upon receipt of the purchase price, those facts fall short of ratifying Gardner's act in executing for him a binding agreement of sale. There is no sufficient evidence that O'Reilly ever acquired knowledge of that act, and in the absence of proof of such knowledge, ratification could not be made out.

It results that upon the evidence Keim has failed to establish the binding force of this agreement, and could not enforce it against O'Reilly, if now living.

Turning now to the second agreement, that of October 29th, 1881, it is obvious that Keim's right to the relief which has been accorded to him by this decree must depend upon his

having established, by such proof as has been before indicated, that Gardner had been lawfully authorized to sign it, by those upon whom the title to the lands therein mentioned had devolved on the death of Patrick O'Reilly, or by those who had acquired power to sell those lands.

The first question is, who could, on that date, empower Gardner to sign that agreement?

It appears in the case that Patrick O'Reilly had then died, leaving a will whereby he had devised the use of his real estate to his wife, Catharine C., for life, and the remainder to his five children, one of the shares having been devised in trust. He thereby appointed his said wife and his sons, Francis P. and James A. O'Reilly, executrix and executors, and gave them, as executors, full power to sell his real estate. At his death, Patrick O'Reilly was a resident of Pennsylvania, and his will was proved in that state, in January, 1881, by the executrix and executors. It does not appear what proof of the execution of the will was there made. .

It further appears that in May, 1881, Catharine C. O'Reilly presented to the surrogate of Atlantic county her petition praying for an order to show cause why a duly-certified copy of the will of Patrick O'Reilly should not be filed and recorded in his office and letters testamentary thereon be issued to her. Upon this petition the surrogate made an order to show cause, returnable before him on July 5th, 1881, and directed that his order should be published in a specified newspaper for the space of thirty days next preceding the return-day. On that day, upon an affidavit of the publication of the order to show cause in the newspaper named for the space of four weeks preceding that day, the surrogate ordered the copy of the will to be filed in his office, and recorded the same and issued letters testamentary thereon to Catharine C. O'Reilly alone.

It is evident that these proceedings were taken under color of the provisions of sections 23 and 25 of the Orphans Court act. *Rev. p. 757*. Letters testamentary issued under these provisions are therein declared to be of the same force and effect as if the will had been produced and proved by the subscribing witnesses

in the usual manner under the laws of this state, and it is further enacted that the record of such will is to be admitted in evidence and to have the same force and effect as if it had been proved in the usual manner under the laws of this state.

Two questions of importance are suggested thereon. The first is, whether these provisions of the Orphans Court act are to be construed as permitting the admission to record and giving force and effect to wills made in other states which do not appear to have been executed according to the requirements of our laws. As before stated, it does not appear what proof of execution of the will was made in Pennsylvania, and there is no evidence of its having been executed in the manner required by our laws. *Allaire* v. *Allaire, 8 Vr. 312; S. C., 10 Vr. 113; Nelson* v. *Potter, 21 Vr. 324; Lindley* v. *O'Reilly, 21 Vr. 636.*

The second is, whether the surrogate acquired jurisdiction to record the will and issue letters thereon when it appeared in his proceedings that his order to show cause had not been published for the space of time thereby directed.

By section 10 of the Executors and Administrators act (*Rev. p. 397*), as amended by a supplement of March 17th, 1881 (*Rev. Sup. p. 293*), it is enacted, among other things, that where by a will executed in due form of law lands have been ordered to be sold by executors therein named, and one or more of them shall refuse or neglect to prove the will, then the trusts in the will shall vest in the executor who shall prove the will, unless it is otherwise expressed in the will. It is also provided that it shall be lawful for such an acting executor to sell and convey lands pursuant to the power, in the same manner as if all those to whom the power was granted had joined in the sale. As the section was construed by the supreme court, in *Weimar* v. *Fath, 14 Vr. 1,* and by the court of errors, in *Denton* v. *Clark, 9 Stew. Eq. 534,* it is obvious that if Patrick O'Reilly's will was in fact executed in the manner required by our laws, and Catharine C. O'Reilly had presented and proved it in the usual manner before the surrogate of Atlantic county, her letters testamentary would have enabled her to exercise the power of sale which the will conferred on her and her two sons.

Other serious questions are here presented. One question is, whether these provisions operate upon wills recorded under sections 23 and 25 of the Orphans Court act and letters testamentary issued thereon, or at least upon such wills when it does not appear whether or not the execution thereof was in conformity with our laws. Another question is whether an executor who procures a foreign will to be recorded under the provisions of those sections, and secures letters testamentary thereon, can be said to have proved the will within the meaning of section 10 of the Executors and Administrators act, so as to obtain authority to exercise, by his sole act, the power of sale conferred by the will on himself and others jointly.

But it is unnecessary to decide any of these questions, and they are thus mentioned only to avoid any appearance of having passed upon them; for, whether Catharine C. O'Reilly acquired, by virtue of the letters testamentary issued to her in Atlantic county, the sole power to sell these lands, or whether that power remained in herself and her two sons, the executors, is, in the view I take of the case, wholly immaterial. If she acquired the sole power of sale, Gardner's authority to sign the agreement in question must appear to have been conferred by her. If she and her sons remained the joint donees of the power of sale, it is equally necessary that Gardner's authority should have been conferred by her, for joint powers must be jointly exercised, and each donee must exercise his own discretion and will in the sale. Authority given to Gardner by Francis P. and James A. O'Reilly would not have been sufficient. Such authority could not be given without her taking part in conferring.

I will not prolong this opinion by undertaking to review in detail the evidence upon which it is claimed to have been established that Catharine C. O'Reilly authorized Gardner to sign this agreement. There is no pretence that she ever conferred such authority by express words. The circumstances, which have been deemed to justify an inference that she antecedently conferred such authority, are all consistent with the relation between them, if any existed, being that merely of principal and an ordinary real estate broker not empowered to bind his prin-

cipal to a sale. All taken together, fall far short of indicating any grant by her to Gardner of larger power. Nor does the proof establish a ratification by her of Gardner's act in signing this agreement. Knowledge on her part that he signed this agreement is essential to ratification, and such knowledge is, in our judgment, not proved.

While this disposes of this part of the case, I think it proper to say that if authority to sign this agreement could have been conferred on Gardner by Francis P. and James A. O'Reilly alone, evidence that such authority had been conferred is, in my judgment, wanting. I am unable to disregard their solemn denial, under oath, of any knowledge that Gardner had undertaken to bind the estate to this sale, upon inferences drawn from conduct in all respects consistent with the relation of Gardner being that of their real estate broker. Actual knowledge that Gardner had bound the estate to sell this land for $10,000 is quite inconsistent with their conduct in proceeding, without remonstrance, to expend upon the lands, and in litigation to obtain possession of them, a sum which the evidence indicates to be about $15,000, and in rejecting Keim's offer of pecuniary aid in the litigation.

But if I had reached the conclusion that the donees of the power of sale, under Patrick O'Reilly's will, had authorized Gardner to sign the agreement in question, I should be unable to support the decree which requires its specific performance. In the first place, Gardner's authority, if given at all, was not so extensive, for the $10,000 was to be the consideration for only part of the lands described and agreed to be sold. In the next place, the agreement is, in my judgment, beyond the power of these donees of the power of sale to make. They were empowered to sell the title of Patrick O'Reilly in the lands. But those lands or some of them were then in possession of persons claiming adversely to the estate. The executors could not bind the estate to make a good title to the lands, much less to free them from "opposing or contesting claims of title." If they could do so, the contract was so improvident that a court of equity ought not to enforce it.

Lindley et al. *v.* Keim et al.

The result, however, is that the second agreement is not established by the evidence as an enforceable agreement against the donees of the power of sale under Patrick O'Reilly's will.

It follows that the decree requiring the executors of his will to specifically perform the two agreements is erroneous.

It is equally erroneous in requiring the devisees under that will to specifically perform these agreements, for there is no pretence that they had given authority to Gardner to make the second agreement.

It also follows that the decree, so far as it affects Lindley and Adams, is erroneous, because they represent in some respects the interest of the O'Reilly estate in these lands or some of them.

The decree, therefore, in favor of Keim and against the executors and devisees of Patrick O'Reilly, and against Lindley and Adams, must be reversed, and the record be remitted with directions to enter a decree dismissing the bill.

This disposes of the case, because Keim's appeal is rendered of no avail by the reversal of the decree, the condition annexed to which was the subject of his appeal.

But it may be observed that the fact that the decree for specific performance in this case was only made upon such a condition, affords a strong argument against the decree itself.

In decreeing specific performance of contracts for the sale of land, equity treats the buyer as having become the owner of the lands, and the seller as having become entitled to the purchase-money as of the time fixed for the performance of the contract. It then adjusts the incidents of the contract, such as rents and profits, taxes, interest &c., equitably between buyer and seller upon that theory.

The condition imposed upon Keim by the decree does not, in my judgment, grow out of such incidents of the agreement. His sellers, by its terms, were to convey the lands to him free from all opposing and contesting claims. If it was a valid agreement it cast on the estate of O'Reilly the burden of such litigation as was necessary to enable such conveyance to be made. Whether or not Keim would have consented to bear some of that burden, had he foreseen the great increase in the value of the

property, is immaterial. His contract as made did not require him to contribute anything to such litigation. Yet this decree, by the condition annexed to the specific performance directed, imposes on Keim the total expenses of the litigation above the sum of $500. This sum is fixed upon as being what the parties probably contemplated as the costs of the necessary litigation. Such a decree does not enforce the agreement made by the parties, but adds a term thereto and directs the agreement as so amended to be carried out. The term added was based upon an arbitrary determination as to what the parties probably had in contemplation when making the agreement, and Keim was required to pay everything over that amount, obviously because it was deemed inequitable to enforce the agreement as it was made. It is unnecessary to say that an agreement which it is inequitable to enforce as made, ought not to be enforced at all, but parties should be left to their legal remedies.

O'Reilly et al. *v.* Keim—

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL. BARKALOW, BOGART, NIXON—12.

*For affirmance*—None.

Lindley and Adams *v.* Keim—

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGART, NIXON—12.

*For affirmance*—None.

Keim *v.* O'Reilly—

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGART, NIXON—12.

*For reversal*—None.