Argued March 1, decided March 15, 1910.

## DAVIS v. BRIGHAM.

[107 Pac. 961.]

VENDOR AND PURCHASER—OFFER TO SELL—OFFER BY CORRESPONDENCE.
1. Where M. had written to defendant, advising the sale of a tract of land to a third person for $1,600, the reply, "I consider $1,600 decidedly too small a price, but if mine is needed to develop the country, I will let it go for that price, provided it is taken within twenty days," is not an offer to sell to M., but authorizes him to bring a purchaser at the price and within the time named.

VENDOR AND PURCHASER—OFFER TO SELL—ACCEPTANCE.
2. Where an owner of land on August 25th wrote to M., offering to sell at a certain price if taken within 20 days, M.'s telegram on September third to send the deed in the name of plaintiff to a certain bank, according to the letter of August 25th, was not an acceptance either for M. or for plaintiff.

VENDOR AND PURCHASER—OFFER TO SELL—ACCEPTANCE—AUTHORITY.
3. One answering an offer to sell land cannot be deemed to have accepted the offer for another where he had no written authority, as required by Section 797, B. & C. Comp., nor even oral authority.

FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM.
4. Though the statute of frauds requires the memorandum of agreement for the sale of land to be signed only by the party charged in an

action, yet there must be a contract, and it is necessary that the other party shall have accepted or assented to the terms of agreement the writing contained.

SPECIFIC PERFORMANCE — CONTRACTS ENFORCEABLE — ACCEPTANCE OF OFFER.

5. To entitle a vendee of real estate to maintain specific performance, based on an offer of defendant to sell, there must have been a clear and explicit acceptance within a specified time.

VENDOR AND PURCHASER—OFFER TO SELL—TIME OF ACCEPTANCE.

6. On an offer to sell land for a certain price within a specified time, an agreement to take it is not alone an acceptance, but the money must have been paid within the time stated.

ESCROWS—NATURE AND REQUISITES—CONTRACT BETWEEN PARTIES.

7. Where an offer to sell land at a certain price within a specified time was not accepted within the time, the deposit of a deed by the owner in a bank with instructions to collect the price named did not constitute an escrow, since the owner was not under contract.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by W. G. Davis against Glen A. Brigham and Kate Brigham, his wife, and the Monroe Timber Company, a corporation (intervenor), to enforce the specific performance of a contract for the sale of real estate. Plaintiff alleges that defendant Brigham, who resides at Buckley, Michigan, was, in August, 1906, the owner of the S. ½ of the S. ½ of Section 10, Township 15 S., Range 7 W., W. M., in Linn (Lane) County, Oregon, and on that date contracted and agreed in writing with plaintiff, who resided at Seattle, Washington, to sell and convey such land to plaintiff for $1,600, and at that date plaintiff agreed to buy it at that price; that thereafter, on September 15, 1906, defendants, according to the terms of the contract, executed a deed therefor, and delivered the same to Dexter Horton & Co., bankers at Seattle, for plaintiff, to be delivered upon the payment by him of said sum; and that thereafter, in October, 1906, while the deed was in the possession of the bankers, plaintiff offered and tendered the sum of $1,600 and demanded the deed, which was refused by order of defendants, and the deed was recalled by defendants.

The answer denies the allegations of the complaint, except such as are expressly admitted, and admits the execution of the deed, and that it was sent to Dexter Horton & Co., and sets forth several affirmative defenses, the substance of which are:

(1) That the deed, together with a draft on plaintiff for $1,600, was sent to Dexter Horton & Co., at Seattle, Washington, with instructions to collect the draft, and, upon payment thereof, to deliver the deed to plaintiff, but the payment was not made by plaintiff and defendants recalled the draft and deed.

(2) That the execution of the deed and its transmission to Dexter Horton & Co. was secured by fraud and misrepresentation.

(3) That the alleged contract of sale was void within the statute of frauds.

(4) That the defendants' offer to sell the land was withdrawn before the same was accepted by plaintiff.

(5) That the alleged contract of sale was without consideration and void.

It appears that one Mitchell, on January 30, 1906, wrote to Brigham as follows:

"I have options on about 4,000 acres of land in township 15 south, 7 west, Lane County, Oregon, and would like to get your price on your land in Section 10.  * *  I have been trying to sell my claim for the past four or five years, but could not get anything for it.  So now I am trying to get all who own to sell together.  It is the only way land can be sold out here, is to bunch it up."

On August 19, 1906, Mitchell again wrote to Brigham:

"I just returned from Lane County, Oregon.  I had Mr. Davis, of the Lewis County Logging and Lumber Company, down there looking over the timber in township 15 south, 7 west, and they will buy in there if they can get thirty or more claims at about $1,500 or $1,600 per claim.  I am very anxious to sell mine, as I am very much afraid of it being burned, and as it is so far from transportation it would be a total loss in case of a fire.

There is a big fire burning now in Linn County, which has already destroyed millions of dollars' worth of timber, and the fire is still burning and can't be stopped unless we should get heavy rains. I am going to put my claim in at $1,600, and they can get about fifteen others that they have communicated with at from $1,200 to $1,600. You see they don't want to buy unless they can get enough to make it pay to put a railroad into to get it out. Hoping to hear from you," etc.

On August 21st, plaintiff, for his company, wrote to Brigham:

"We have been investigating timber land in Lane County, Oregon, in township 15 south, 7 west. I find the timber very fair, but, as you undoubtedly know, it is quite a ways from transportation, and therefore it is not as inviting as if it were closer by. Would say that if we can get thirty claims or more we will buy, and if your claim is for sale, wish you would kindly advise by return mail, and, if price is satisfactory, will advise you what bank to send your deed to. On account of the fire risk and the distance from transportation, the price must necessarily be somewhat low."

On August 25th Brigham wrote to Mitchell as follows:

"Yours of the 19th relative to my quarter section near yours, I consider $1,600 decidedly too small a price, but if mine is needed to develop the country, I will let it go for that price, provided it is taken within twenty days."

And on September 13th Mitchell wired Brigham: "Send deed in name of W. G. Davis to Dexter Horton & Co., bankers, Seattle, Wash., per your letter August 25th."

On September 10th Davis, for his company, wrote to Brigham:

"Mr. F. H. Mitchell advises that you will sell your claim in township 15, L. 5-7, Lane County, Oregon, for $1,600. Mr. Mitchell has been in the woods and just returned Saturday, therefore we did not get this information sooner, and would say that we have sent Mr. Mitchell in to cruise the timber, and think we can give you a decided answer in fifteen or twenty days. We enclose you an option blank, which we would like to have you make out and give us

the option to purchase for thirty days. As explained in our previous letter, we did not want to buy unless we could get enough to make an object, and I think we will have no trouble in getting at least thirty claims right away. The owners are scattered all over the country, and it takes a long time to get a reply. Trusting to hear from you at your earliest convenience I remain."

On September 17th Brigham wrote Mitchell: "Deed will be sent tomorrow through the Traverse City State Bank from Traverse City, Michigan. Have ordered abstract also sent to your bank."

And on September 18th Garland, cashier of the Traverse City State Bank, wrote to Dexter Horton & Co., according to directions from Brigham: "Herewith I hand you warranty deed, G. A. Brigham and wife to W. G. Davis, with draft attached for $1,600, which you will deliver only on payment of draft, $1,600, and collection charges, as Mr. Brigham says he must have the full amount of the draft. Would also state that Mr. Brigham has ordered on the abstract direct to you people."

. The draft and deed accompanied this letter. There was some other correspondence between the two banks as to the sufficiency of the deed sent to Dexter Horton & Co. on September 18th. On October 8th, the draft not having been paid, Garland wired Dexter Horton & Co., by direction of Brigham, as follows: "Return collection sent September 18, Davis draft and deed." Subsequent correspondence indicates that thereafter, on October 12th, Davis was ready with the money to take up the deed, but it was refused by Brigham. Brigham at no time wrote to or recognized Davis or dealt with him, except that he sent the deed, in which he was named as grantee, and the draft upon him for the price of the land to Dexter Horton & Co. The trial court made findings of fact in favor of defendant and rendered a decree accordingly. (We find this correspondence set out in full in the findings made by the trial court contained in the abstract, which counsel

for the respective parties at the argument recognized as correct, but part of these exhibits and evidence seems to be missing. The brief refers to the "Seattle depositions" but we find none in the record, although the county clerk certifies that the book of testimony, depositions and exhibits contains the whole thereof.) Plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton* and *Messrs. Williams & Bean,* with oral arguments by *Mr. George W. Stapleton* and *Mr. John M. Williams.*

For respondents there was a brief over the names of *Mr. M. G. Munly* and *Mr. Lark Bilyeu,* with an oral argument by *Mr. Munly.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first question for consideration is: Was there a contract between defendant Brigham and plaintiff for the sale of the land? We think not. Defendant's offer of August 25th to sell was not an offer to Mitchell as he was not seeking to purchase, but it authorized Mitchell to bring him a purchaser at the price named within 20 days.

2. Mitchell's telegram of the 13th was not an acceptance either for himself or for Davis. It was not mutual. *Sprague* v. *Schotte,* 48 Or. 609 (87 Pac. 1046). Brigham could have had no remedy thereon. It was simply an effort of Mitchell to bring Brigham and Davis together, but at no time were they brought together upon terms of sale. Davis by his letter of the 10th of September sought to secure an option to purchase the land, but made no effort to accept the terms contained in Brigham's letter of August 25th, and Brigham did not at any time recognize Davis as the party with whom he was dealing.

3. Neither can Mitchell be deemed to have accepted the offer for Davis, as his authority to do so must have been in writing as provided by Section 797, B. & C. Comp., but even oral authority to act for him is not shown.

4. Although by the statute of frauds the memorandum of the agreement need only be signed by the party charged (which refers not to the party charged with the contract, but the party charged in the action; that is, the defendant), yet there must be a contract. To make it obligatory, it is necessary that the other party shall have accepted or assented to the terms of the agreement the writing contains. *Case T. M. Co.* v. *Smith,* 16 Or. 381 (18 Pac. 641). See note to *Ullsperger* v. *Meyer,* 217 Ill. 262 (75 N. E. 482: 2 L. R. A. [N. S.] 221: in 3 Am. & Eng. Ann. Cas. 1036).

5. In this case if there was a contract it was in writing signed by both parties, but it does not amount to a contract. There was no acceptance upon which Brigham had any remedy. To entitle the vendee of real estate to maintain a suit for specific performance based upon an offer by defendant to sell, there must have been a clear and explicit acceptance of the offer within the specified time. *Phelps* v. *Good,* 15 Idaho, 76 (96 Pac. 216) ; *Robinson* v. *Weller,* 81 Ga. 704 (8 S. E. 447). And the acceptance must be of the terms of the offer.

6. The telegram by Mitchell to defendant to "send deed in name of Davis, to Seattle, Washington, per your letter August 25th," is not a compliance with defendant's offer to "let it go for that price provided it is taken within 20 days." The telegram is not even an agreement that Mitchell or Davis will take the property, nor is an agreement to take it sufficient. The money must have been paid to defendant within the 20 days at Buckley, Michigan. In *Foss* v. *Ater,* 49 Wash. 446 (95 Pac. 1017), it is held that "offer accepted" without a tender of the money would not convert the offer into a binding contract of sale. *Sawyer* v. *Brossart,* 67 Iowa, 678 (25 N. W. 876: 56 Am. Rep. 371) ; *Kelsey* v. *Crowther,* 162 U. S. 404 (16 Sup. Ct. 808: 40 L. Ed. 1017) ; *Sands* v. *Crosby,* 74 Mich. 313 (41 N. W. 899) ; *Robinson* v. *Weller,* 81 Ga. 704 (8 S. E. 447).

But the telegram does not purport to be an acceptance by any one. Nothing that took place after September 13th in any way related to the offer of Brigham of August 25th, and, when Brigham sent the deed and draft to Dexter Horton & Co., he was not under contract with any one to do so, and it was subject to his recall at any time.

7. The deposit of the deed with Dexter Horton & Co. was not an escrow in the sense that plaintiff had any interest therein. It was not a deposit upon a contract with him that it should be deposited nor had he a right to demand that it remain in escrow for his benefit or for any period of time. There was no contract or agreement between them at any time. An escrow is defined in 16 Cyc. 562: "In the great majority of cases, the instrument deposited, together with the stipulation as to the condition or the event upon performance or happening of which the instrument is to take effect, constitutes a contract. Indeed, by the general rule, there must be a valid existing agreement between the parties, containing all the elements of a contract." "As a general rule, the condition must be part of a contract between the parties." Page 564. 11 Am. & Eng. Enc. Law (2 ed.) page 335, contains a clear and comprehensive statement of the character of contract that is essential to constitute an escrow: "In order that an instrument may operate as an escrow, not only must there be sufficient parties, a proper subject-matter, and a consideration, but the parties must have actually contracted. When the instrument purports to be a conveyance of land, for instance, the grantor must have sold, and the grantee must have purchased, the land. A proposal to sell or a proposal to buy, though stated in writing, will not be sufficient. The minds of the parties must have met, the terms must have been agreed upon, and both must have assented to the instrument as a conveyance of the land, which the grantor would then have delivered and the grantee received, except for the agreement then made

that it be delivered to a third person, to be kept until some specified condition be performed, and thereupon be delivered to the grantee by such third person." *Miller* v. *Sears,* 91 Cal. 282 (27 Pac. 589: 25 Am. St. Rep. 176) ; *Fitch* v. *Bunch,* 30 Cal. 208; *Stanton* v. *Miller,* 58 N. Y. 192; *Campbell* v. *Thomas,* 42 Wis. 437 (24 Am. Rep. 427) ; *Patterson* v. *Underwood,* 29 Ind. 607; *Wier* v. *Batdorf,* 24 Neb. 83 (38 N. W. 22.)

Therefore the remittance of the deed in favor of Davis and the draft upon him to Dexter Horton & Co. at Seattle, on September 19th, was not an escrow and was subject to his recall at any time before it was delivered, and it was recalled on October 8th.

The decree of the lower court is affirmed.

AFFIRMED.