This is on bill for specific performance. An option was given by John Rooney to sell his property April 16th, 1923. On April 19th, 1923, there was a formal contract to sell, signed by John Rooney, as attorney in fact for the estate of James Rooney. On April 20th, 1923, power of attorney was given to John Rooney to act for the heirs on the sale of the property, which was signed by some of the heirs for themselves, and also signed for the others, but without authority. John and Thomas Rooney undoubtedly signed these agreements and are bound by them. The other heirs claim that *Page 50 
they never authorized or ratified the contract of April 19th, 1923, and that those who signed the power of attorney of April 20th (which complainants refer to as the "ratifying agreement") did not know its contents, and that they supposed that they were furnishing a list of the heirs only.
Specific performance is only to be exercised in the sound discretion of the court, and is not a matter of right.
To warrant specific performance the proof must be clear and convincing.
If the proof is substantially evenly balanced, or if the court is left in doubt because of the lack of clearness of it, it denies specific performance and leaves the parties to their remedy at law. Lindley v. Keim, 54 N.J. Eq. 418.
The testimony seems to be sufficient for the court to decree specific performance against John Rooney and Thomas Rooney, but is very insufficient and doubtful with relation to the other heirs. They deny having ever authorized the contract, or that they ratified it. The complainants have tried to make out a case based upon inference and possibilities and circumstantial deductions, to fasten the contract upon the other heirs; but, in the face of their positive denials, it is difficult to see how this testimony is to prevail against them. Farrier v. Shaw,118 Atl. Rep. 339.
The relief of specific performance is discretionary, and when the testimony is substantially in balance, or weighs about evenly, or when it leaves the court in doubt, the undoubted rule is that specific performance will be denied, and the parties will be left to their remedy at law.
Under these circumstances it would seem that the complainants are entitled to specific performance as against John and Thomas Rooney, if they desire it, for their interest in the land, but upon payment of the full purchase price.
I do not see where the court has the power to force a new contract on the parties, and say that they should take less than the purchase price agreed upon, particularly where it is clear, as it is in this case, that the purchasers knew that there were outstanding interests which might not have authorized the making of the contract. *Page 51 
If complainants do not see fit to take a decree for specific performance against John and Thomas, for their interests, upon payment of the full consideration agreed upon, then they may elect to have the bill dismissed.
As to the other defendants, I think that specific performance should be denied.
In order that there may be a ratification of a preceding act or document, all the details of the act and all the terms of the document must be brought home to the attention of the party whose ratification is sought. He only ratifies those things which are brought home to him as having already been done. That principle is well established.
The first instrument executed by John Rooney, as has been stated already, was an agreement to sell his property. A few days later the second document was executed by John Rooney as attorney for the estate of the decedent. That was the printed, formal agreement to sell the property in question. Almost immediately after that was executed the prospective purchasers appeared to have conceived the idea that it was not binding upon the other co-owners, for they at once sought out the other heirs and endeavored to obtain from them a ratification of that agreement. If there was no question as to the validity of that agreement, why should these purchasers have been so fearful of it, and why should they have taken such immediate and aggressive steps to secure a ratification of it?
The last paper executed was this so-called ratification, on April 20th, 1923. The testimony clearly shows that only a part of the owners actually signed it, and some of those signed for the remaining owners, upon the statement, they say, made by the purchasers, that they simply wanted to secure a list of the names of the heirs. However that may be, it is difficult to see how this paper of April 20th, 1923 (marked "Exhibit C-5 1/2"), can be called a ratification. There is nothing in the testimony to show that the precedent acts of John Rooney, and the agreement of April 19th ("Exhibit C-4"), with all its terms, were brought to the attention of these parties whose ratification was sought. Nor does this paper of April 20th, *Page 52 
1923, in terms, purport to be a ratification of anything. It is rather an authorization, at that point, to John Rooney to act in behalf of the purported signers, on the sale of the estate of the late James Rooney. Its exact language is: "We, the undersigned heirs of James Rooney, do appoint John Rooney with power of attorney, and do invest him with full power to act in our behalf on sale of estate of the late James Rooney." This power of attorney could, of course, be revoked at any time. The most that could be said for it is that it might have been a sufficient authorization to John Rooney to act for those who had become parties to it in the future, subsequent to its execution. But there is nothing in the testimony to show that any action was taken by John Rooney, subsequent to its execution, to effectuate a conveyance of the property in question, pursuant to its authority. Had there been, there might be a different situation presented for adjudication, but even then it could not go beyond the point of being regarded as an authorization to sell the interests of those who were parties to it. Certainly, it could not bind those whose names were signed without their knowledge and without their assent.
I shall so advise.