41 N.J. Super. 538 (1956)
125 A.2d 535
ROBERT J. ROSE AND LLOYD V.S. CONOVER, PLAINTIFFS-APPELLANTS,
v.
H. PHILIP MINIS AND DOROTHEA H. MINIS, AND MAX ZAITZ AND DAVID ZAITZ, PARTNERS, T/A B. ZAITZ & SONS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1956.
Decided September 28, 1956.
*539 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Francis P. Sutton argued the cause for the plaintiffs-appellants (Messrs. Hauck, Herrigel & Sutton, attorneys).
Mr. James S. Turp argued the cause for the defendants-respondents Max Zaitz and David Zaitz, partners, t/a B. Zaitz & Sons (Messrs. Turp & Coates, attorneys).
*540 Mr. Thomas P. Cook argued the cause for the defendants Minis, respondents-cross appellants (Messrs. French and Cook, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff Robert J. Rose sought specific performance of an alleged agreement for the purchase of certain property owned by the defendants, H. Philip Minis and Dorothea Minis, his wife. Lloyd V.S. Conover joined in the action as plaintiff, asserting that he was the broker who produced Rose as the buyer; he demanded judgment for commissions on the sale.
The Minises counterclaimed for damages against Conover, claiming that he was guilty of a breach of the fiduciary relation which existed between them in connection with the alleged sale to Rose.
Max Zaitz and David Zaitz, trading as B. Zaitz & Sons, were allowed to intervene as defendants. They filed an answer setting forth that they had acquired a valid agreement to buy the property in question which they were entitled to enforce.
After full hearing, the trial court decided adversely to both plaintiffs' claims. He concluded further that the Zaitzs held a binding purchase agreement and ordered the Minises to convey to them. The counterclaim against Conover for breach of the trust relationship was dismissed as not supported by the proof. Both plaintiffs have brought the matter to us for review. Defendants Minis also appeal from the rejection of the counterclaim.
The determination adverse to the plaintiff was based upon a number of grounds by the trial court. On this appeal, in our judgment, it is necessary to consider only one of them, namely, the defense of the Minises that Conover's authority to act as broker had been revoked before the alleged sale to Rose.
Prior to the events which gave rise to this litigation the Minis owned property had been on the market for sale for some time. Conover, a real estate broker, had interested *541 himself in bringing about its disposition. The owners had ample written notice of this.
Around the middle of December 1954 he made contact with the plaintiff Rose as a prospective purchaser. After some preliminary negotiations with Rose, Conover prepared a written instrument for execution by Mr. and Mrs. Minis. In doing so, he had the advice and assistance of an attorney. The paper was presented to them and after some conversation was had indicating the existence of a possible buyer, they signed it. A few changes and terms were written in by Mr. Minis.
It was in letter form, addressed to Conover, dated December 31, 1954, and provided as follows:
"In reply to your statement, about your party interested to buy our farm. We herewith agree to sell the farm (reserving the new house with boundaries as we set them up today, with right of way on existing roads), the new house plot to comprise no more than 300 x 700 ft. And agree to sell the balance of the farm, approximately 204 acres with the buildings thereon for $60,000., on terms ten percent paid now, and thirty (30) percent paid in six months on passing title, with balance of the purchase price on five year purchase money mortgage, with prepayment clause. Interest on said mortgage to be at the rate of five (5) percent per annum, interest to be payable semi-annually.
And we herewith give you ten (10) days option from the date hereof to make the sale; and we agree that anytime within the option period that the ten percent deposit is paid us we will sign an agreement to sell as above, and on passing title to deliver a good marketable title by warranty deed. Taxes and insurance to be adjusted as of date of passing title. And we further agree if the sale is made to your client, that at the time of passing title we will pay you a broker's commission of five percent based on the sale price." (Emphasis ours.)
On January 3, 1955 Conover appeared at the Minis farm with an unsigned form of contract of sale. It did not contain Rose's name; nor was it accompanied by the 10% deposit check. Discussion ensued about particular terms which appeared therein and about some which were not included. Conover departed for further conference with his client. That evening by telephone Mr. Minis retained *542 an attorney to represent him and arranged for a meeting the next morning.
In the morning of January 4 Minis visited the attorney's office and went over the matter with him, including the "option" letter of December 31. Thereafter on the same morning the attorney telephoned Conover and told him that the letter was revoked because it was confusing and did not contain all of the terms that had been discussed, particularly with regard to amortization of the mortgage. However, he advised that Mr. and Mrs. Minis were anxious to dispose of the property and perhaps something could be worked out with Conover's client if an accord could be reached on all of the details and a satisfactory credit report was obtained.
There was a dispute at the trial as to the exact context of this conversation. But the court announced specifically that he believed the attorney's version of it and the evidence is adequate to support the finding.
By coincidence, on the same day, January 4, Mr. Minis received a telephone call from Max Zaitz in reference to a rental of the farm. Minis informed him that he and his wife wished to sell. During the afternoon Zaitz inspected the farm and discussed terms of sale and agreed to purchase it for $70,000 in cash. Late in the evening an agreement was drawn by Minis' attorney, signed by the parties at Minis' home, and a deposit check for $7,000 given. In the testimony the concord was spoken of as a preliminary agreement, although Minis considered it binding. In relating the circumstances surrounding the transaction, the attorney said he received a call from Minis at home around dinner time. He had some short forms of agreement there and used them at the meeting to formalize the understanding with Zaitz. On January 11 the agreement was reexecuted; the terms were the same but specific reference to the deed into the Minises had been inserted and typing substituted in place of the handwriting of January 4.
On January 5 Conover came to the farm and tendered a contract signed by Rose and his check for $6,000 as a deposit. The Minises declined to sign or accept the check *543 and referred him to their attorney. The next day he visited the attorney, who did not advise him of the deal with Zaitz. Instead, some further suggestion was made about the amortization rate of the purchase money mortgage provision at which Conover left to take up the matter with Rose. The reason advanced for the nondisclosure is that the Zaitz deposit check had not yet cleared and while the feeling was that a binding agreement had been made, the attorney considered it advisable not to break off negotiations with Rose until the Minises were completely secure.
The deposit check cleared on January 7. On that day the attorney told Conover that his clients had some one else interested in the property and did not wish to sign a contract with Rose. Four days later, after the more formal contract was signed, Minis informed Conover that the property had been sold.
Our study of the so-called "option" leads us to the conclusion that it is simply a naked revocable authority to produce a purchaser within ten days on the terms indicated. It is not a contract express or implied, but an offer to pay for services if performed within the period stated and before revocation. Ettinger v. Loux, 96 N.J.L. 522 (E. & A. 1921); Eberly v. Gutentag & Son, 28 Ohio App. 102, 162 N.E. 619 (Ct. App. 1927); Davis v. Brigham, 56 Ore. 41, 107 P. 961 (Sup. Ct. 1910). In the Ettinger case, the owner of property gave a writing to the broker which said:
"`Philip Ettinger, Agent: I hereby authorize the above to sell my property at 189 16th Ave., at a 3 1/2 percent. rate, for $11,000.00 or any price above $11,000.00; provided said property is sold by Mr. Philip Ettinger within (30) thirty days from this date in accordance with my provisions of sale mortgage 4,000.'"
Five days later, Loux effected a sale independently of the broker. Within the 30-day period Ettinger produced a purchaser, ready, able and willing to buy on the terms fixed and upon learning of the previous sale, sued for his commissions. The Court of Errors and Appeals held that the written authorization to the broker was revocable and *544 did not preclude the owner from making a sale himself without incurring liability for commissions.
Even if the purport of the authority granted to Conover could be considered as an exclusive agency, that is, one which barred the owners from employing any other broker for the ten-day period, the Minises would not be deemed to have relinquished the right to sell themselves. Id., 96 N.J.L., at pages 524, 525; Axe v. Tolbert, 179 Mich. 556, 146 N.W. 418 (Sup. Ct. 1914).
It is only when an authorization confers an exclusive right to sell on a broker for a fixed period of time that an owner who secures a buyer himself within the time limited brings an obligation for commissions on himself. Martin Realty Co. v. Fletcher, 103 N.J.L. 294 (Sup. Ct. 1927).
Under the circumstances disclosed by the record before us, valid and timely revocation of Conover's agency was accomplished in two ways. First, it was expressly cancelled on January 4, 1955 by the attorney for the owners; second, it was impliedly revoked on the same evening when the owners sold the premises to Max and David Zaitz. Withdrawal of his authority before he brought forth a buyer on the terms prescribed effectively removes any right to commissions. And the rights of Rose, who never obtained a binding contract with the Minises, can rise no higher than those of the broker. The letter to Conover did not constitute an offer to Rose or to any buyer; it was merely an authorization to the broker to find a buyer on the terms indicated. Gumbin v. Alexander, 22 F.2d 889 (7 Cir. 1927); Holway v. Malloy, 70 Cal. App.2d 317, 160 P.2d 893 (D. Ct. App. 1945); and see Lindley v. Keim, 54 N.J. Eq. 418, 423 (E. & A. 1896).
It is not necessary to consider any of the other grounds urged on the main appeal. With respect to the cross-appeal, examination of the testimony reveals no basis for interference with the finding of fact made by the trial court.
The judgment is affirmed. No costs to either party.