[No. 57. Decided November 14, 1890.]

## Thomas Carstens v. Levrett McReavy.

REAL ESTATE BROKERS—AUTHORITY TO SELL—APPEAL—STATEMENT OF FACTS.

The supreme court will not pass upon the sufficiency of evidence to sustain the findings of fact, nor its admissibility concerning certain matters, where the statement of facts does not include the testimony in so far as it touches the objectionable findings, and does not contain any question or answer, nor any objection, ruling or exception.

Under a verbal authority to sell land, a real estate agent or broker has no power to enter into a contract of conveyance binding upon his principal.

*Appeal from District Court, King County.*

Action to compel a specific performance of an alleged agreement to sell and convey certain real estate in the city

of Seattle, King county, State of Washington. The trial court found the following facts:

"First: The appellant owned two lots in Burke's second addition to the city of Seattle, which, by parol order, he placed in the hands of real estate brokers for sale, and himself removed to Los Angeles, California; afterwards, by letter, he directed said brokers to sell said real estate upon terms in substance the same as those upon which they finally negotiated a sale. Second: In pursuance of such authority, said brokers negotiated a sale to the appellee, and executed a written contract of sale, which is set forth in the amended complaint, and thereupon demanded of appellant a conveyance to the appellee; this he refused to make, refused to accept the money which they had received from appellee, and has since steadily refused, though conveyance was demanded of him by appellee, and the balance of the purchase price tendered, and the tender ever since made good."

The receipt and contract of sale referred to in the findings is as follows:

"Seattle, Wash. Ter., Feb'y 25, 1888. Received this date of L. McReavy, of King county, Wash., the sum of three hundred dollars, being deposit as earnest money to bind the bargain for purchase by him of the following described real estate, to wit: Lots 13, 14, block 15, Burke's addition to the city of Seattle, the purchase price of which agreed upon is the sum of six hundred dollars, to be paid in gold coin, as follows, viz.: Cash, three hundred dollars, bal. on or before May 2, 1888. Ten days are allowed to the purchaser herein named for search of title to said real estate, which it is agreed shall be promptly made, and if such title is found imperfect and cannot be perfected within —— days, then, and in that case only, said earnest money so deposited to be returned. $300.00. Eshelman, Llewellyn & Co., agents."

Judgment was rendered in said action for plaintiff, and defendant appeals.

*Thompson, Edsen & Humphries,* and *Rochester, Lewis & Gilman,* for appellant.

*Preston, Albertson & Donworth,* for appellee.

The opinion of the court was delivered by

STILES, J.—A so-called statement of facts is brought up with the record in this case, which is merely a slight enlargement of the findings of fact filed by the judge who tried the cause. Presumably this statement was intended to respond to the first and third grounds urged on the motion for a new trial, viz.: That the evidence was insufficient to justify the findings, and that the court erred in permitting the agents of the appellant to testify concerning certain matters. When this court is called upon to say whether the evidence fails to sustain any or all of the findings of fact below, the testimony, at least in so far as it touches the objectionable findings, must be included in the statement. And if objections to the admission of testimony are relied on, the questions asked, the answers returned, and the documents admitted, if any must appear with such other of the testimony as may be necessary to explain the connection of the objectionable matter with the case. In this instance the statement does not contain the name of a single witness, or the statement of any witness, nor any question or answer, nor any objection, ruling or exception; and it very decidedly sustains the findings in every particular, as might be expected. Therefore it is useless for the purposes for which it was prepared, and we must confine any examination of the case to the other question raised, which is whether the conclusions of law and the judgment were warranted by the findings, which were in almost the same language as that of the complaint.

The appellant was the owner of certain real property in the city of Seattle, and the court found that at a certain date agents named, who were real estate agents in Seattle, "were the agents of defendant for the sale of the aforesaid real estate, and were then and there duly authorized and empowered by the defendant, by writing under the defendant's hand, to make and negotiate a sale of said real

estate." The agents thus authorized, executed and delivered to the appellee a contract for the sale of the appellant's property, without his knowledge, and in his absence from the state, and received a portion of the purchase money. Appellant refused to recognize the contract thus made, claiming that the authority by him given to "*sell*" did not include the authority to execute a contract, or anything more than to find a purchaser. This was the vital point in the case, upon which the court held with the appellee, and directed that the contract thus made be performed.

The statute of frauds may be satisfied by the execution of a contract for the sale of lands by the hand of another person than the party to be charged, if that person be thereunto lawfully authorized, and it is well settled that such third person may be thus lawfully authorized orally, by written direction not under seal, and, even, by a course of conduct amounting to an estoppel. It, therefore, only remains to determine whether the ordinary real estate agent or broker, authorized to *sell* land, is thereby empowered to enter into a contract binding upon his principal in an action for specific performance. A real estate agent is a person who is, generally speaking, engaged in the business of procuring purchases or sales of lands for third persons upon a commission contingent upon success. He owes no affirmative duty to his client, is not liable to him for negligence or failure, and may recede from his employment at will, without notice. On the other hand, courts almost unanimously unite in holding that in case of an ordinary employment to sell, once he has procured a party able and willing to buy, upon the terms demanded by his principal, and has notified him of the purchaser's readiness to buy, the agent's work is ended and he is entitled to his commission. It is not his duty to procure a contract or make one, and he is not in default if he fails to do either. Therefore, to our mind, it seems clear that ordinarily it is not within the contemplation of the owner and agent, where property of

this character is placed in the hands of the latter for sale, that he shall, without consultation with his client, execute a contract. We are aware that courts have held to this extent, basing their decisions upon a distinction between an authority to sell and an authority to find a purchaser, and upon the well known rule that an authority to an agent to do a thing is presumed to include all the necessary and usual means of executing it with effect. But such holdings do not commend themselves to our judgment, and, as this is a new question in this state, and we are satisfied that it is not the general practice of agents to make such contracts, we do not hesitate to dissent from the decisions above mentioned, especially as there is no lack of authority for the position we take. We cannot shut our eyes to the obvious defect in the argument that authority to sell, in this instance, necessarily implies authority to execute a contract. A sale of land, "executed with effect," includes the execution of a deed and the delivery of possession, neither of which the agent can do, unless his authority to sell is supplemented by the delivery of possession to him and a power of attorney to convey. So that he does not, although in possession of the authority to *sell*, have all the necessary means of executing that authority with final effect. He stops short somewhere, and when we are inquiring where the probable and proper place of his stoppage is, the evils that would attend the extension of his actual authority beyond the finding of a purchaser, furnish ample reason for fixing his limit there. An agency of this kind may be created by the slightest form of words, without any writing, leaving it to litigation to determine whether the substance of the authority is " to sell " or " to find a purchaser," wherein the unscrupulous and dishonest agent would be at once arrayed as the principal witness against his client, with every advantage, from some note, "made at the time," of what the instruction was. Perjury would go at a premium in such cases, and the confiding and un-

lettered would be its victims. Scarcely any man, when listing his property with a real estate agent, stops to give details either as to the property itself or as to the arrangements he desires to make, yet no one would sell upon equal terms to a first class business man and to an habitual drunkard, or well known insolvent; and the ordinary owner would not sell at all to a person whose very occupancy would tinge the neighborhood with a bad repute. These are good reasons, and are, probably, some of the reasons why custom and the law have made it not necessary that real estate agents should actually procure contracts in order to earn their compensation; and why, in this connection, the common understanding of the phrase "authority to sell" means only authority to find a purchaser, whether the authority be given orally or by written request.

In considering this case we have examined the numerous authorities cited by both sides, as well as many others, and find the position we take fully sustained by *Morris v. Ruddy*, 20 N. J. Eq. 236; *Milne v. Kleb*, 44 N. J. Eq. 378; *Duffy v. Hobson*, 40 Cal. 240; *Armstrong v. Lowe*, 76 Cal. 616; Mechem on Agency, § 966; Warvelle on Vendors, 213; 2 Am. and Eng. Ency. Law, p. 573, note 2. The earlier cases in New York were to the same effect, notably: *Coleman v. Garrigues*, 18 Barb. 60, and *Glentworth v. Luther*, 21 Barb. 145; but they were overthrown by *Haydock v. Stow*, 40 N. Y. 363; without sufficient reason, as it seems to us. We note that in nearly if not all the states where the courts at any time held agents to sell real estate authorized to execute contracts of sale, especially in New York and Illinois, the legislatures very soon after amended the statutes of frauds so as to require the agent's authority to contract to be in writing.

*Lyon v. Pollock*, 99 U. S. 668, presents a state of facts not found, to any extent whatever, in the case at bar, and is, therefore, not applicable, and the same may be remarked

of *Rutenberg v. Main*, 47 Cal. 213. What a broker must do to "complete a sale" is well defined in *McGavock v. Woodlief*, 20 How. 221, thus: "The broker must *complete the sale;* that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commission." *Per contra*, if the broker has "completed the sale" so as to be entitled to his commissions, by finding a purchaser, without a contract, his duty is thereby performed and his authority exhausted.

The judgment of the court below must be reversed, and the action dismissed. Costs to the appellant.

ANDERS, C. J., and HOYT, DUNBAR and SCOTT, JJ., concur.