[No. 5781.  Decided January 9, 1906.]

GEORGE R. E. MONK et al., Appellants, v. FRED DUELL et al., Respondents.[1]

VENDOR AND PURCHASER — CONTRACT FOR SALE — CONSTRUCTION — OPTION AND NOT AN AGENCY—RIGHTS OF PURCHASERS.  A contract whereby the owner of premises agrees to sell the same amounts to a conditional sale or option, and does not constitute the vendee an agent for the sale of the premises, where it was provided that the vendee was to have six months in which to resell the premises, and deposit $145 per lot, net to the owner, in a bank, less five per cent commission, and where the time was extended from time to time and the owner made deeds to various purchasers of lots resold by said vendee; hence the contracts made by said vendee on receipt of installments of purchase money, without depositing the same in bank and completing his purchase, which was subsequently declared forfeited, are not sufficient to pass any title, or to compel the owner to make conveyances as for sales made by an agent.

BONA FIDE PURCHASER—IMPROVEMENTS—RECOVERY FOR ON FAILURE OF PURCHASE.  Bona fide purchasers of real estate from an unauthorized agent, who take possession of vacant and unoccupied land in good faith, are entitled to recover the value of improvements if the same were made after the enactment of Laws 1903, p. 262, and not for improvements made prior thereto.

Appeal from a judgment of the superior court for King county, Morris, J., entered January 3, 1905, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action of ejectment.  Reversed.

Shank & Smith, for appellants.

Winsor & Hadley, for respondents.

CROW, J.—This is an action in ejectment, instituted by George R. E. Monk and Anna Monk, his wife, appellants, against Fred Duell, Ella Duell, his wife, and Nelson Duell, respondents, to recover possession of certain real estate in

[1]Reported in 83 Pac. 313.

King county. From a judgment in favor of respondents this appeal has been taken.

The action was tried to the court without a jury. Brief findings were made in favor of respondents, and findings requested by appellants were refused. From the evidence we find, that on March 26, 1902, appellants George R. E. Monk and Anna Monk, his wife, entered into a written contract with one Henry Siepman, as follows:

"Articles of Agreement made and entered into this 26th day of March, one thousand nine hundred and two (1902), between Geo. R. E. Monk, of the City of Seattle, King county, state of Washington, party of the first part, and Henry Siepman, of the city of Ballard, King county, state of Washington, party of the second part.

"Witnesseth: It is hereby agreed by and between the above named parties, that Geo. R. E. Monk, party of the first part, is the owner in fee simple of lots 8, 9 and 10 in block number nine (9), lots number one (1) to fourteen (14) inclusive, in block number eight (8) and lots number nineteen (19) to twenty-four (24) inclusive in block number three (3), Sander's Addition to Gilman Park and Salmon Bay, and he agrees to sell the same to Henry Siepman, the party of the second part, for the sum of three thousand three hundred and forty ($3,340) dollars within six (6) months from the above date. It is also agreed and understood that Henry Siepman in this six (6) months is to sell the above named lots in the above named blocks at not less than one hundred and forty-five ($145) dollars per lot net to the party of the first part. All money received by the party of the second part is to be placed in the Boston National Bank of the city of Seattle to the credit of the party of the first part, less the five (5) per cent commission, and after six (6) months the party of the first part is to turn over to the party of the second part all money above one hundred and forty-five ($145) dollars per lot sold; also the party of the second part is to assume all lots not sold and pay the party of the first part the sum of one hundred and forty-five ($145) dollars for the lots not sold. In case the party of the second part does not fulfill his agreement, then this agreement is to be null and void;"

that at the expiration of said six months, an extension of thirty days was given to Siepman and indorsed upon the contract; that thereafter the contract was further verbally extended from time to time for several months, and then forfeited for nonperformance by Siepman; that on or about March 21, 1903, the said Henry Siepman entered into a written contract with respondent Nelson W. Duell, whereby he agreed to sell to said Duell lot 2 in block 8 of said Sander's addition to Gilman Park and Salmon Bay, for the sum of $175, payable in installments, $25 in cash, and $10 on the 21st day of each month thereafter until the full purchase price should be paid; that said contract was in usual form, did not mention or allude to appellants, but purported upon its face to effect a sale from said Henry Siepman, as vendor, to said Nelson W. Duell, as vendee; that on or before September 21, 1903, said Henry W. Duell by installments had paid Siepman thereon purchase money to the total amount of $85; that on said March 21, 1903, said Henry Siepman also executed and delivered to respondent Fred Duell a like written contract, whereby he sold Fred Duell lot 1, in said block 8, for the sum of $200, payable in installments, $25 in cash, and $10 on the 21st day of each month thereafter, upon which said Fred Duell had, on or before September 21, 1903, made payments by installments to the total amount of $85; that on March 24, 1903, said Henry Siepman also executed and delivered to respondent Ella Duell a like written contract for lots 7 and 9, in said block 8, for the sum of $350, payable in installments, $175 in cash and $20 on the 24th day of each month thereafter, upon which said Ella Duell had, on or before May 27, 1903, made payments in installments to the total amount of $275; that said Henry Siepman never had any record title to said real estate, nor was the contract between him and appellants placed of record; that said respondents made no examination of the title, but were informed by one Keene, who acted as agent for said Siepman,

that the title was good, without naming the party in whom the record title stood; that prior to making said sales to respondents, said Siepman had made cash sales of other lots for prices of more than $145 each, paying to appellants Monk the money received therefor, instead of depositing the same in the bank; that thereupon appellants had immediately executed and delivered their deeds conveying said lots directly to the several purchasers; that Siepman never informed Monk of said sales to respondents, nor did he ever deposit in bank or pay to Monk any of the installments of purchase money which he had collected from respondents; that some time in August, 1903, said Monk first learned of said sales, and immediately notified respondents that Siepman had no authority to make such contracts, whereupon respondents ceased making payments to Siepman; that immediately thereafter said Monk, through his attorneys, made unsuccessful efforts to reach some adjustment, in order that respondents might be protected; that afterwards, on or about October 13, 1903, appellants demanded possession of said real estate, which being refused this action was commenced.

Respondents pleaded said contract between appellants and Siepman; also, said contracts between Siepman and themselves; alleged that Siepman was the agent of Monk, with authority to make said contracts of sale; alleged that valuable improvements had been made by them upon the lots, without stating the exact dates of such improvements; and alleged that they had tendered the remainder of the purchase money to appellant Monk, and that they were still ready, willing, and able to pay the same. Upon trial appellants contended, that the contract between themselves and Siepman was merely an option to Siepman to purchase said real estate; that it did not constitute Siepman their agent to sell said real estate, or, in any event, if he should be construed to be their agent, he had no authority to sell on installment contracts, or to give any contracts. Respondents contended that,

by said contract, Siepman became the agent of appellants, with full authority to make said sales to respondents, and that such sales were afterwards ratified by appellants. The evidence, however, utterly fails to show any such ratification.

The rights of the parties herein must be determined by a proper construction of the contract between Monk and Siepman, which is exceedingly vague and difficult to understand. After a careful examination of its terms, in the light of the evidence showing the construction placed thereon by the actions of Monk and Siepman, we have concluded it was a contract of sale; that Siepman was to purchase all of the lots therein described, within six months from its date; that for the purpose of enabling him to perform the contract, he was granted the privilege of negotiating sales of separate lots, not on time but for cash, being required to promptly pay into bank for Monk the entire proceeds of such sales, as and when made, less a five per cent commission, with the understanding, however, that the amount so turned in should in no instance net Monk less than $145 for each lot sold. It was evidently contemplated that Siepman might, from time to time within said six months, sell lots for much larger prices than $145 each—in fact, he did this—and that, when he did so, it became his immediate duty to turn the entire proceeds over to Monk, less the five per cent commission. The contract also provided that, at the expiration of said six months, Monk should account to Siepman for all the proceeds of such previous sales, over and above the sum of $145 per lot, provided, however, that Siepman should then fully complete his contract by paying for all unsold lots at $145 each. It is true, a commission is mentioned, but our understanding of the purpose of this is that, whereas Siepman might, and did, sell lots for cash for sums in excess of $145 each, he would thereby be compensated for such sales which would inure to the benefit of Monk, in the event of the failure of Siepman

to fully complete his contract of purchase within the six months.

While the contract is indefinite, we conclude that Siepman was not authorized to sell lots upon installments; nor was he authorized to execute and deliver his own contracts of sale therefor. *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471; *Armstrong v. Oakley,* 23 Wash. 122, 62 Pac. 499; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180. To hold that he might execute such contracts, and thereby bind appellants would be to hold that he could convey a better title or a greater right than he himself possessed. As Siepman's acts in making said installment sales to respondents were without authority, and as he was not the agent of appellants for any such purpose, appellants were not bound by his acts, nor compelled to give respondents credit for the purchase money collected by him. Before appellants demanded possession from respondents they had declared a forfeiture of their contract with Siepman by reason of his nonperformance. It appears that, at the time respondents purchased under their contracts with Siepman, the lots were vacant, unimproved, and not occupied by any person. We think the trial court erred in finding appellants were not entitled to possession of the real estate in dispute at the time of the commencement of this action.

The evidence shows that improvements of considerable value were made by respondents after they purchased from Siepman. There is no evidence, however, which definitely discloses the dates of such improvements. In 1903 an act entitled "An act for the protection of occupants of land who have in good faith made improvements and paid their taxes thereon," was passed by the legislature. Laws 1903, page 262. This act did not go into effect until June 11, 1903. We have held said act does not apply to improvements made prior to the date upon which it went into effect. *Investment Co. v. Hambach,* 37 Wash. 629, 80 Pac. 190; *Barton v.*

*Wickizer,* ante p. 293, 83 Pac. 312.   Respondents, however, purchased in good faith, were holding in good faith under color or claim of title adversely to the claim of appellants, and their improvements were made in good faith.   If such improvements were made on or after June 11, 1903, they would be entitled to recover therefor under the provisions of said act.   If they were made prior to that date they are not entitled to recover.

There is evidence tending to show that some improvements were made prior to that date, while other evidence tends to show that some may have been made thereafter.   It was respondents' duty to show the exact dates of the making of these several improvements.   This they failed to do, perhaps for the reason that the case was tried for the purpose of determining who was entitled to possession of the real estate, and not so much with reference to the value of the improvements or time they were made.   Justice should be done to all the parties, hence we do not feel that we should order final judgment.

It is ordered that the judgment of the superior court be reversed; that this cause be remanded, with instructions to the superior court to make a finding that appellants Monk and wife were entitled to possession of said real estate at the date of the commencement of this action, and with further instructions to permit the introduction of additional evidence for the purpose of ascertaining when the various improvements were made, with their value; and also the value of said lots, in order that the court may be enabled to enter final judgment and decree in accordance with the provisions of chapter 137, Laws 1903, p. 262, if the same shall be found to be applicable by reason of any of such improvements having been made after said act went into effect.   The appellants will recover costs on this appeal.

MOUNT, C. J., DUNBAR, HADLEY, RUDKIN, and ROOT, JJ., concur.