[No. 16038.   Department One.   March 24, 1921.]

PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, *Respondent*, v. S. C. MUNSON et al., *Appellants*.[1]

FORCIBLE ENTRY AND DETAINER (4)—PERSONS ENTITLED—CONVENTIONAL RELATION.   An action of unlawful detainer may be maintained without the existence of the conventional relation of landlord and tenant, under Rem. Code, § 812, subd. 6, defining unlawful detainer by "any person who shall, without the permission of the owner and without having any color of title thereto, enter upon the land of another" and fail to remove after three days' written notice.

BROKERS (4) — EMPLOYMENT — AUTHORITY CONFERRED.   Under the rule that an agent employed to find a purchaser of land cannot bind his principal by a formal contract of sale, evidence tending to show that defendant was put in possession by a mere sales agent was inadmissible in an action of unlawful detainer.

[1]Reported in 196 Pac. 633.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered June 9, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for unlawful detainer. Affirmed.

*Delle & Delle,* for appellants.

*Rigg & Venables,* for respondent.

FULLERTON, J.—Prior to the year 1916, the respondent, Pacific Mutual Life Insurance Company of California, became the owner, through a sale under a mortgage foreclosure, of certain orchard lands situated in Yakima county. After acquiring the land, the company employed one R. W. Herod to care for and manage the property pending a sale of the land, informing him that it was not its purpose to hold the land for a longer period than it was necessary so to do, as it was not "in the real-estate business." While acting as manager of the property, Herod found contemplative purchasers in the persons of the appellants, S. C. Munson and J. R. Ziegler. A proposition for its purchase made by the appellants to Herod was submitted to the respondent by Herod, and the matter became the subject of a somewhat extended correspondence between them. While these negotiations were pending, Herod, without the knowledge or consent of the respondent, permitted the appellants to enter upon the property. The sale was not consummated, and the respondent instituted the present action, under Rem. Code, § 812, subd. 6, to oust the appellants from the premises. The action was successful and this appeal followed.

In this court the appellants make the contention that the action will not lie. Their learned counsel argues that an action of unlawful detainer will lie only where the conventional relation of landlord and tenant is

shown to exist, and that here there was no such relation, citing cases from this court and others in support of the proposition. But we are not pursuaded that the contention is well founded. As the statute was originally enacted (Laws of 1891, p. 179) it did not contain the subdivision numbered 6 on which the present action is founded. This subdivision is an amendment to the statute, enacted at the legislative session of 1905. Laws of 1905, p. 174. The amendment introduced a new element. The statute thereafter, in addition to providing that a tenant was guilty of unlawful detainer if he held over after the happening of certain stated conditions, further provided that,

"Any person who shall, without the permission of the owner and without having any color of title thereto, enter upon the land of another and who shall fail or refuse to remove therefrom after three days' notice in writing to be served in the manner provided in this act,"

should likewise be guilty of unlawful detainer. The cases cited by the appellants from this court, namely: *Seattle Operating Co. v. Cavanaugh*, 6 Wash. 325, 33 Pac. 356, and *Meyer v. Beyer*, 43 Wash. 368, 86 Pac. 661, were based on the statute as it existed prior to the amendment. But in the subsequent case of *Columbia & Puget Sound R. Co. v. Moss*, 44 Wash. 589, 87 Pac. 951, we held that, in virtue of the amendment, one who enters upon the land of another without the permission of that other and without color of title was within the purview of the statute, notwithstanding the conventional relation of landlord and tenant did not exist. The appellant makes the contention that the case did not present the question actually determined for the reason that the record in the cause shows that the controversy there determined grew out of a tenancy. Citations from the briefs of the parties are made in sub-

stantiation of the claim, but we cannot so read them. From a statement made in the brief of the respondent at the page cited, it could be so inferred, but that this was not the intention of the author of the brief is made clear by a subsequent statement therein, where this language is used:

"In the first place, it is to be noted that section 1170, of which subdivision 6 is a part, relates only to tenants of real property. The relation of landlord and tenant in no wise can be said to exist between the appellant and respondent in the case at bar, the whole tenor of the complaint being that the respondent entered without consent. Without this relation existing, no rights whatever can be predicated upon the section relied upon or any part of it."

This, as we understand it, is not only a denial of the conventional relationship of landlord and tenant, but invokes the very contention that the appellants in the cause before us are invoking. But were the facts as the appellants contend, we nevertheless think the question rightfully decided upon principle. To hold otherwise would be, in practical effect, to hold that the amendment was without purpose, and to insert a useless amendment cannot have been the intent of the legislature.

At the trial on the merits of the controversy, the appellants offered in evidence the correspondence between Herod and the respondent, contending that it shows an agency on the part of Herod to enter into a binding contract for the sale of the property. This evidence the trial court refused to admit. It also refused to admit proffered evidence tending to show a contract entered into between Herod and the appellants for the purchase and sale of the property, and evidence of declarations made by Herod tending to show the extent of his agency. We cannot believe that

it would serve any useful purpose to set forth this correspondence at length. To our minds it does not substantiate the appellants' claims. We can find in it no authority for, or the ratification of, the contract the agent attempted to make. As we said in *Hutchins v. Wertheimer,* 51 Wash. 539, 99 Pac. 577, this is but the common case of an agent, employed to find a purchaser for property, attempting to bind his principal by a formal contract of sale. That an agent employed merely to find a purchaser cannot so bind his principal, we have many times decided. *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471; *Scully v. Book,* 3 Wash. 182, 28 Pac. 556; *Armstrong v. Oakley,* 23 Wash. 122, 62 Pac. 499; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Monk v. Duell,* 41 Wash. 403, 83 Pac. 313; *Foss Investment Co. v. Ater,* 49 Wash. 446, 95 Pac. 1017; *Hardinger v. Columbia,* 50 Wash. 405, 97 Pac. 445; *Lawson v. King,* 56 Wash. 15, 104 Pac. 1118.

In view of the argument submitted by the appellants, it may be well to say that we do not here deny that agency may be created by conduct as well as by written agreement, nor do we deny that, if the proffered evidence had a tendency to support the authority claimed for the agent, the question should have been submitted to the jury. What we hold is that the proffered evidence had no such tendency, and that a verdict of a jury in favor of the appellants founded thereon could not be allowed to stand.

The judgment is affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.