[No. 30140. Department One. June 13, 1947.]

JOHN N. LEE, *Appellant,* v. NETTIE C. ESTABROOK,
*Respondent.*[1]

*Davis & Riese,* for appellant.

*Cochran & Cochran* and *Ballinger, Hutson & Truscott,*
for respondent.

SIMPSON, J.—Plaintiff instituted this action to compel
specific performance of a contract to convey real estate,
signed by the alleged agent of defendant. The court sus-
tained a demurrer to the complaint, based on the ground that
the facts stated therein did not constitute a cause of action.
Plaintiff refused to plead further, the cause was dismissed,
and this appeal resulted.

Plaintiff's assignments of error are: in holding that the
amended complaint failed to state a cause of action, and in
sustaining the demurrer to the complaint.

[1] Reported in 181 P. (2d) 830.

It is necessary to refer to the complaint and set out portions of exhibits B, C, D, and E, attached to, and made a part of, the complaint.

It was alleged that respondent owned a certain tract of land in Pierce county, Washington; that about January 31, 1946, respondent signed an agreement giving to Harold A. Allen Company the exclusive right to sell or trade the real property. The agreement, designated as "EXHIBIT B," reads as follows:

"I/we hereby give to Harold A. Allen Company, of Tacoma, Wash., the exclusive right, against all others, including myself/ourselves, to sell or trade the property situated in the City of Tacoma, towit:

"See description on other side.
at the following price and terms or any modification thereof *thereof* that I may hereafter accept. Price $15,000 cash and the balance as follows:
The authority herein conferred shall continue in full force and effect until the 30th day of April, 1946. If a sale is effected during this agreement, I/we agree to furnish an acceptable abstract or title insurance policy brought down to date and further agree to pay Harold A. Allen Company five per cent commission on the price at which sold.

"It is further agreed that, if the property shall afterwards be sold or traded by me/us within three months from the termination of this agreement to any purchaser introduced by Harold A. Allen Company during the life of their agency, the full commission will be paid as hereinabove provided."

Attached to this agreement was a description of the real property and certain personal property.

May 28, 1946, appellant paid to Harold A. Allen & Company the sum of five hundred dollars as earnest money and offered to purchase the property for twelve thousand five hundred dollars. On the same day, Harold A. Allen Company sent a telegram to respondent which read:

"Mrs. Nettie C. Estabrook     Tacoma, Washington
"1448 North Broad Street     28 May 1946
"Hillside 5, New Jersey
"Have earnest money on offer $12500 cash for Lakewood place. Every effort has been made to sell property for you through advertising showing, etc. Those shown usually object to age and condition of two houses which is not good.

This offer by far better than any others made we believe it an excellent one. Buyer meets all requirements you stipulated. If acceptable, there is time for you to be here at closing as sixty days required to obtain title insurance. Please wire reply collect.

"HAROLD A. ALLEN COMPANY
"By C. R. CARLSEN.

"CHG: H. A. ALLEN Co., 1012 Rust Bldg.,
"BR-3237"

May 31, 1946, respondent sent the following telegram to Harold A. Allen Company:

"T.PA276 8-Point Pleasant NJER 31  1105A     May 31 1946
"HAROLD A. ALLEN CO.:  ATTN C R CARLSEN          A. M. 8 55
"*TACOMA WASH*
"ACCEPT 12000 CASH MY PART AIR MAIL FOLLOWS
                                    "N ESTABROOK."

Pursuant to the instructions contained in the telegram, a contract was signed which read as follows:

"Received of John N. Lee, a single man, the sum of FIVE HUNDRED AND No/100 . . . . . . DOLLARS ($500.00) as earnest money and part payment for the following described real estate, situated in the County of _____, State of Washington, to-wit: The North one half (½) of the Northeast Quarter (¼) of the Southwest Quarter (¼) of the Northwest Quarter (¼) of Section Ten (10), Township Nineteen (19), Range Two (2) East of W.M., less East 30 feet for road. Subject to an easement for electric transmission and distribution line.

[Included in this sale are all awnings, window screens and screen doors; and all plumbing, lighting (except floor and stand lamps), heating (except stoves,) cooling, ventilating, elevating, watering and water heating apparatus and fixtures; also all shades, curtain and drapery rods, linoleum, and all attached bath room accessories; together with all trees, plants and shrubbery in yard as of this date.]

which we have this day sold to him or his assigns, for the sum of THIRTEEN THOUSAND Dollars ($13,000.00); balance of purchase price to be paid as follows: To be financed by a G.I. loan.

"Taxes due and payable in 1946 are to be pro-rated.

"We agree to convey said property free and clear of all incumbrances, except [insertion] no exceptions . . .

"This agreement is made *subject to the approval of the owner,* and no stipulations not contained herein shall be effective.

"HAROLD A. ALLEN & Co.

"By C. R. CARLSEN

"Agent for Owner.

"I agree to purchase said above described premises upon the terms and conditions above stated.

"JOHN N. LEE

"Purchaser."

It is appellant's position that the amended complaint states a cause of action against respondent; that the facts alleged, if proved, would entitle appellant to a decree requiring specific performance of the agreement designated as "EXHIBIT E."

Respondent contends that the agent, Harold A. Allen & Company, did not have authority to enter into a binding contract for the sale of the property, and that the agent did not properly exercise the authority, if any was given.

As we view the issues in this case, the only question presented for consideration is: Did the agent, Harold A. Allen & Company, have the authority to enter into a contract for the sale of land, which would be binding upon respondent? All of the documents attached to the complaint are considered together as relating to the transaction, and all of them have a bearing upon the question considered.

In the first instance, respondent entered into the agreement which gave to the real estate company the right to sell her property for a certain sum of money, and although that contract had expired because of the time limit mentioned in it, the telegram sent to respondent made a definite reference to that agreement. The answer by respondent indicated approval of the terms contained in the first-mentioned contract. However, we cannot conclude that the acceptance indicated by exhibits B, C, and D, was sufficient, or any authority, for the real estate company to bind respondent to the terms of the contract known as "EXHIBIT E."

We will assume, without so deciding, that the documents known as exhibits B, C, and D, gave the real estate company the right to sell respondent's property.

The terms contained in exhibit E were entirely different from those included in exhibit B. The first contract provided for a cash payment for the real property and certain personal property. The last contract, exhibit E, made no reference to the personal property. The first contract provided for a cash payment, while the last contract provided for the payment of the purchase price "to be financed by a G. I. loan." The first agreement stated: "Taxes: $73.34." The last provided that the taxes payable in 1946 were to be prorated. The variances we have pointed out are so great as to compel a holding that there was no meeting of the minds of the parties.

Giving the documents all possible consideration and credit, it must be concluded that appellant meant to do one thing—that is, buy the property for thirteen thousand dollars; that a G. I. loan would be obtained to raise the whole, or at least a major portion of the purchase price, and that he wanted to have the 1946 taxes prorated. By the terms of the first agreement, exhibit B, which appellant contends was approved by respondent, the terms were cash, without any exception, such as securing a G. I. loan. Moreover, the first agreement did not speak of prorating the taxes.

The securing of a G. I. loan is surrounded with many difficulties, as is shown by 38 U.S.C.A. (Sup.), § 694a, which reads:

"Any loan made to a veteran under this subchapter, the proceeds of which are to be used for purchasing residential property or constructing a dwelling to be occupied as his home or for the purpose of making repairs, alterations, or improvements in property owned by him and occupied as his home, is automatically guaranteed if made pursuant to the provisions of this subchapter, including the following:

"(1) That the proceeds of such loan will be used for payment of the property purchased or constructed or improved;

"(2) That the contemplated terms of payment required in any mortgage to be given in part payment of the purchase price or the construction cost bear a proper relation

to the veteran's present and anticipated income and expenses; and that the nature and condition of the property is such as to be suitable for dwelling purposes; and

"(3) That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator."

The complicated forms for veterans' loans, as shown by American Law of Veterans, pp. 313 to 329, inclusive, indicate further difficulties. The forms include: (1) certification of eligibility, (2) loan guaranty certificate, (3) application for home loan guaranty, (4) appraisal report, (5) loan guaranty certificate, and (6) loan closing statement. Based upon these considerations, it is clearly apparent that the last agreement, exhibit E, did not provide for a cash payment as provided for in the first agreement, and as indicated in both telegrams.

In line with the conclusion just stated is the case of *Hardinger v. Columbia,* 50 Wash. 405, 97 Pac. 445, in which it appeared that a contract to sell was signed by a realtor, as representative of the owner. The terms of sale mentioned in the written instrument were: price of land, three thousand eight hundred dollars, to be paid, twelve hundred fifty dollars in cash; eleven hundred fifty dollars on delivery of deed and abstract; balance in equal payments, with six per cent interest; grantor to release mortgage on any designated tract of fifty feet by one hundred feet, on payment of five hundred dollars. The authority claimed for the agent was a letter written to the owner by the realtor, stating that he, the agent, had an offer of three thousand eight hundred dollars for the property—twelve hundred fifty dollars cash; twelve hundred fifty dollars on or before one year; and the balance on or before two years, with interest on deferred payments at the rate of six per cent per annum, and that a deposit had been made. In answer to that letter, the owner of the land wired: "All right, offer accepted, will write today." The letter which followed simply confirmed the telegram. The court in passing stated:

"The contract as entered into provides for a mortgage back, partial releases of the mortgage on payment of certain portions of the purchase price, and other provisions not referred to in the written correspondence. It is apparent from this that the minds of the parties never met and that the contract in suit was neither executed, approved, nor ratified by the defendants."

■ Another reason for affirming the judgment is that respondent never authorized the realty company to enter into any contract. This holding is commanded by *Carstens v. McReavy*, 1 Wash. 359, 25 Pac. 471; *Scully v. Book*, 3 Wash. 182, 28 Pac. 556; *Armstrong v. Oakley*, 23 Wash. 122, 62 Pac. 499; *Samson v. Beale*, 27 Wash. 557, 68 Pac. 180; *Foss Inv. Co. v. Ater*, 49 Wash. 446, 95 Pac. 1017; *Hardinger v. Columbia, supra; Lawson v. King*, 56 Wash. 15, 104 Pac. 1118; *Pacific Mut. Life Ins. Co. v. Munson*, 115 Wash. 119, 196 Pac. 633. In these cases, we have consistently held that the employment of a real estate broker to sell land does not authorize the broker to enter into a contract binding his principal to convey the land.

Appellant argues that the above cases are not in point because the authority given to the realtor in this case was in writing—(a telegram.) This contention is not borne out by our cases. In *Armstrong v. Oakley*, the authority was by letter. In *Foss Inv. Co. v. Ater*, the authority was by both letter and telegram. Acceptance of the offer of the agent in *Hardinger v. Columbia* was by wire. And the instruction in *Lawson v. King* was by letter.

Appellant calls our attention to the case of *Ankeny v. Young Bros.*, 52 Wash. 235, 100 Pac. 736, and argues that it is controlling here. He states:

"In that case the question of vesting an agent with authority was involved, and a telegram containing the language 'Young Bros. accepts * * *' was held to create an agency for the purpose of entering into a contract binding on the principal. The court said, at page 242:

" 'Upon receipt of the telegram "Young Bros. accepts," etc., Bickford became the agent of the appellant, empowered to buy the coffee for it, and he did so.'

"The foregoing is in support of the position taken in the briefs filed herein by appellant, that respondent's telegram "Accept 12000 cash my part' vested authority in the agent to execute the earnest money agreement for an amount which was for more than the $12,000 cash as respondent's 'part.' "

An examination of the case reveals that it was based upon ratification made by the principal, after the agent had made a purchase of coffee on his principal's behalf, the ratification being by an acknowledgment of the receipt of the invoice and certain correspondence with the vendor respecting nonarrival of the shipment on time. The factual situation relative to the ratification presented in the cited case is not apparent here. The case is not in point.

In cases of this nature, it must be borne in mind that the powers of a real estate broker are limited, and that one dealing with him is chargeable with notice of the limitation of his power. *Kosten v. Fleming,* 15 Wn. (2d) 523, 131 P. (2d) 170.

The court acted correctly in sustaining the demurrer to the plaintiff's complaint and dismissing the action.

Judgment is accordingly affirmed.

MALLERY, C. J., MILLARD, JEFFERS, and ABEL, JJ., concur.